STATE OF OHIO, EX REL. JOHN SULLIVAN v. JAMES C. MORRIS.

1. APPOINTMENT OF RAILROAD COMMISSIONER BY OUTGOING GOVERNOR INVALID.

The legislature, in providing that members of the Ohio Railroad Commission shall be appointed in January for terms of office beginning February 1, intended that in years when a new governor takes his seat on the second Monday in January, the rule that an outgoing official cannot appoint for a term to begin after his own has expired shall be operative.

2. "RECESS APPOINTMENTS" OF OFFICIALS NOT VALID UNLESS AFTER SINE DIE ADJOURNMENT OF LEGISLATIVE SESSION.

The adjournment of the legislature referred to in this act is the *sine die* adjournment of the session whether regular or extraordinary, and not a mere recess for a specified period; and a "recess appointment" has no validity unless made after final adjournment of the session.

[Syllabus by the court.]

QUO WARRANTO.

**Booth, Keating, Peters & Pomerene,** for plaintiff:

Appointment of railroad commissioner by retiring governor, invalid. *State v. McCollister,* 11 Ohio 46; *State v. Choate,* 11 Ohio 511; *State v. Thompson,* 6 Circ. Dec. 106 (9 R. 161); *State v. Ermston,* 8 Circ. Dec. 83 (14 R. 614), affirmed, *Ermston v. State,* 57 Ohio St. 665; 23 Am. & Eng. Enc. Law (2 ed.) 347; Mechem, Pub. Off. & Off. Sec. 133; Throop, Pub. Off. Sec. 92; *People v. Ward,* 107 Cal. 236 [40 Pac. Rep. 538]; *Ivy v. Lusk,* 11 La. Ann. 486; *State v. Meehan,* 45 N. J. L. 189; *State v. O'Leary,* 64 Minn. 207 [66 N. W. Rep. 264]; *State v. Van Buskirk,* 40 N. J. L. 463; *State v. Catlin,* 84 Tex. 48 [19 S. W. Rep. 302]; *Columbus v. Board of Elections,* 13 Dec. 452; *Allen v. Parish,* 3 Ohio 187.

The appointment of the relator was not invalid because made on the first day of February. *People v. Murray,* 15 Cal. 221; *Saunders v. Grand Rapids,* 46 Mich. 467 [9 N. W. Rep. 495]; *People v. Allen,* 6 Wend. (N. Y.) 486; *Census Superintendent, In re,* 15 R. I. 614 [15 Atl. Rep. 205].

The senate had adjourned. 5 Hinds, Precedents of House Representatives Sec. 851, 852, 6607; *Corwin v. Comptroller-General,* 6 Rich. (S. C.) 390; *State v. Smith,* 44 Ohio St. 348 [7 N. E. Rep. 447].

**Daugherty & Todd,** for defendant.

## DUSTIN, J.

This is an action in quo warranto brought to determine' whether John Sullivan or James C. Morris, or either of them, has been legally appointed to the office of railroad commissioner of Ohio.

January 4, 1909, Andrew L. Harris, then governor of Ohio, pursuant to "An act to regulate railroads, * * * create a board of railroad commissioners," etc., passed April 2, 1906 (98 O. L. 342; Lan. Rev. Stat. 5269a; B. 244-11), appointed James C. Morris as one of the commissioners provided for by said act, for the term of six years beginning February 1, 1909. The Ohio senate being then in session, on the same day confirmed said appointment. January 29, 1909, said Morris took and subscribed his oath of office, as provided for in the statute.

The term of Andrew L. Harris, as governor, expired at noon, January 11, 1909, and Judson Harmon reigned in his stead.

On January 21, 1909, Governor Harmon assumed to appoint the relator to the same office, and for the same term as Governor Harris had appointed Morris, and sent his name to the senate for confirmation. Without acting upon the said appointment of Governor Harmon, the senate pursuant to a joint resolution adopted by it and the house of representatives adjourned January 22, until February 15.

On the first day of February, Governor Harmon, assuming to act under the power granted by the same law, to appoint a railroad commissioner during an adjournment of the senate without action upon his previous selection, again appointed the relator, who forthwith took and subscribed his oath of office.

The question is, which of these two appointments, if either, is valid? The first section of the act in question reads as follows:

"A railroad commission is hereby created to be composed of three commissioners. Within sixty days after the passage of this act the governor shall, by and with the advice and consent of the senate, appoint such commissioners, but no commissioner so appointed shall be qualified to act until so confirmed, unless appointed during the adjournment of said senate. The term of one such appointee shall terminate on the first Monday in February, 1909; the term of the second such appointee shall terminate on the first Monday in February, 1911; and the term of the third such appointee shall terminate on the first Monday in February, 1913. In January, 1909, and biennially thereafter, there shall be appointed and confirmed, in the same manner, one commissioner for the term of six years from the first Monday in February of such year. Each commissioner so appointed shall hold his office until his successor is appointed and qualified. Any vacancy shall be filled by

appointment by the governor for the unexpired term, subject to confirmation of the senate, but any such appointment shall be in full force until acted upon by the senate.''

It is conceded to be the general rule, that an outgoing official cannot appoint for a term to begin after the expiration of his own.

But there is a recognized exception to this rule, which is stated in *State* v. *Ermston*, 8 Circ. Dec. 83 (14 R. 614); affirmed, *Ermston* v. *State*, 57 Ohio St. 665, as follows:

''But when the statute expressly provides that the appointment shall be made on a certain day, or as soon thereafter as practicable, the appointment may be made notwithstanding that the term of such appointee would commence after the expiration of the term of the appointing officer.''

It is claimed that the appointment of Morris is valid, because within the above exception, since the law in question provides that the appointment for the term to begin February 1, 1909, shall be made in *January,* 1909.

It must be presumed that the legislature contemplated that the term of one governor would expire January 11, 1909, and the term of his successor begin on the same day; and that a literal construction of the statute would allow either governor to make the appointment in that month.

But it is also to be presumed that the legislature did not intend to leave the matter open to doubt, or to a race and contest between the two governors as to which one should make the appointment.

In our view the only way to harmonize these presumptions with the apparent uncertainty of the appointing power arising from a literal construction of the statute, is to hold that the legislature intended (not having otherwise provided) that the general rule above noted should govern.

The familiar principle that the common law prevails, except when abrogated by statute, needs no citation.

We conclude, therefore, that the appointment of Morris by the moribund governor, was invalid.

The next question is, was the appointment of Sullivan, February 1, legal.

It is based upon the right of the governor to appoint during an adjournment of the senate without action by that body upon his appointment.

The so-called resolution of adjournment is as follows:

''Be it resolved, by the general assembly of the state of Ohio, that.

the house and senate recess from January 22, 1909, to convene on February 15, 1909, at 1:30 P. M.; that during said recess the committees of the house and senate respectively shall consider such matters as may properly be before them, or may pertain to their duties, and that the extraordinary session of the seventy-eighth general assembly adjourn *sine die* on March 12, 1909, at 4:00 P. M."

The senate journal of January 22 states that:

"On motion of Mr. Mather, the senate *adjourned* until 1:30 P. M., February 15, 1909, in accordance with senate joint resolution No. 7."

It will be observed that the joint resolution uses the word "recess," and provides for the *ad interim* work of committees, and for the adjournment *sine die* on the twelfth of March; and the senate journal, referring to the same action as the joint resolution, uses the word "adjourned."

It is claimed on behalf of the relator that the words "adjourn" and "recess" are synonymous and used interchangeably in legislative records. Authorities seem to sustain that view, but we think the adjournment referred to in the act in question is a *sine die* adjournment of the session, whether regular or extraordinary.

If a recess for three weeks is such an adjournment as the law contemplates, why would not an adjournment for a week or even a day do as well? An adjournment from Friday to Monday would allow a lively governor to do a lot of things on Saturday without "the advice and consent of the senate," and perhaps greatly to the latter's embarrassment. It is inconceivable that the senate when it passed the bill providing for a railroad commission contemplated any such possible treatment. In providing for its own "advice and consent" in the matter of appointments, it undoubtedly meant to give itself reasonable time in which to consider the same. For the consideration of Governor Harmon's appointment it had had only one day prior to the recess. Committees were instructed to proceed with the consideration of matters before them. So that nothing but legislative action was in abeyance. All matters were carried over to be acted upon or not, at a later date, before final adjournment.

We think it was the legislative intent in passing the act in question to give the senate the entire session, if necessary, in which to consider appointments, as well as all other matters before it. If it should adjourn the session without action, then the governor may appoint.

Entertaining these views, we, therefore, hold that the appointment of the relator by Governor Harmon February first, was invalid, the

State v. Morris.

senate not having rejected his appointment of January 2], and not having adjourned the session *sine die.*

The defendant, Mr. Morris, of course, holds over as a railroad commissioner, but neither he nor Mr. Sullivan has been legally appointed to the office for the term beginning February 1, 1909.

Decree accordingly.

Sullivan and Allread, JJ., concur.

---

## APPEAL.

[Cuyahoga (8th) Circuit Court, January. 25, 1909.]

Winch, Marvin and Metcalf, JJ. ·· · ·:

(Judge Metcalf of the seventh circuit sitting in place of Judge Henry.)